**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Jeffrey D. Gilbert</u>

      **v.**                        **Case No. 04-cv-327-PB**

<u>Atlantic Trust Company, N.A.</u>
<u>d/b/a Atlantic Trust/Pell Rudman</u>

## <u>MEMORANDUM AND ORDER</u>

Jeffrey D. Gilbert has filed a complaint alleging that Atlantic Trust Company, N.A. d/b/a Atlantic Trust/Pell Rudman ("Atlantic Trust") mismanaged his investment portfolio. Atlantic Trust seeks summary judgment (Doc. No. 70). For the reasons set forth below, I grant Atlantic Trust's summary judgment motion in part and deny it in part.

## I.  <u>FACTUAL BACKROUND</u>[1]

Gilbert is an attorney. He has also worked as a corporate officer and an investment banker specializing in mergers and

---

[1]  I describe the facts in the light most favorable to Gilbert, the nonmovant.

acquisitions.  Gilbert Ans. to Interrog. at 6.  Atlantic Trust is
an investment management firm with its principal place of
business in Boston, Massachusetts.[2]  Third Amend. Compl. ¶ 2.

During the late 1990s, Gilbert successfully litigated a
statutory appraisal suit in Delaware's Chancery Court.  Gilbert
Dep. at 39-41.  In anticipation of the expected multi-million-
dollar payout from the litigation, Gilbert determined that he
needed the services of a financial advisor to manage his wealth.
In 1998, he began interviewing investment management companies.
Gilbert Ans. to Interrog. at 13.  On February 26, 1998, Gilbert
met with Edward Rudman to discuss Atlantic Trust's financial
advisory services.  During that meeting, Rudman told Gilbert that
Atlantic Trust provided "full-service financial advisory"
services and offered "a broad range of services which included
financial advice on any topic."  Gilbert Dep. at 81-82.  Rudman
also explained that the company had expertise in asset allocation
and used a "proprietary asset allocation model" to design
investment strategies for clients.  Id. at 238.  On June 4, 1998,
Gilbert tentatively selected Atlantic Trust as his financial

---

[2]  Atlantic Trust Company, N.A. is the successor in interest
to Pell Rudman Trust Company, N.A.

advisor and "agreed to [a] proposed asset allocation" of 60 percent stock in mid-cap companies, 25 percent stock in large-cap companies, and 15 percent stock in foreign companies. Id. at 110-13.

In discussions with Gilbert, Atlantic Trust described the proposed all-equity asset allocation as "aggressive but not unreasonably so." Gilbert Ans. to Interrog. at 19. Although Rudman thought a portfolio including 70 percent equities and 30 percent bonds would have been appropriate for Gilbert, Rudman Dep. at 46, and Atlantic Trust's internal investment policy manual suggested diversification among asset classes, Atlantic Trust Policy Manual at 86, Atlantic Trust did not tell Gilbert that the company ordinarily recommended a more balanced portfolio. Gilbert Ans. to Interrog. at 19. Instead, Atlantic Trust stated that "[a]ny risks would be mitigated by diversification of equity classes and of specific stocks within a class." Gilbert Ans. to Interrog. at 19. In addition, Atlantic Trust supplied Gilbert with "a recent, rosy history of double-digit increases in the stock market, not a comprehensive history, which would allow [him] to understand the likelihood and effects of a prolonged bear market." Pl's Obj. to Mot. for Summ. J. at

-3-

14.

In February of 1999, Gilbert officially retained Atlantic Trust and agreed to implement the proposed all-equity asset allocation for the entire litigation proceeds, including money that he expected to owe for his 1999 taxes.  Feb. 12, 1999 Trimby Ltr.  On February 26, 1999, he signed Atlantic Trust's investment management agreement.  On August 4, 1999, he received the proceeds from the statutory appraisal suit.  He entered into a revocable trust agreement with Atlantic Trust the next day. Gilbert Ans. to Interrog. at 19.  The revocable trust agreement gave Atlantic Trust the power "to make any investments [Atlantic Trust] deems wise even if of a kind or in proportions that without this power might not be considered suitable for trust investments."  Rev. Trust Agr. ¶ 8(b).  By September of 1999, Atlantic Trust had invested $13.4 million on Gilbert's behalf. Gilbert Ans. to Interrog. at 19.

During the early spring of 2000, Gilbert discussed his impending 1999 tax liability with Atlantic Trust.  Gilbert Ans. to Interrog. at 20.  The value of Gilbert's stock portfolio had

increased considerably,[3] and Gilbert proposed borrowing to pay his tax bill so as to avoid the hefty tax on short-term capital gains that he would incur if he sold some of his holdings.  Id. Atlantic Trust did not counsel Gilbert against this strategy and contacted Mellon Bank on Gilbert's behalf.  Id.  On April 11, 2000, Gilbert established a $5 million line of credit with Mellon Bank, which was secured by his account at Atlantic Trust.  Id.

By June 1, 2001, Gilbert had borrowed $5,283,000 from Mellon Bank and wanted to borrow more.  Id. at 21.  Gilbert and Atlantic Trust decided to sell Gilbert's foreign holdings, which did not qualify as collateral for the Mellon Bank line of credit, and reinvest the proceeds in mid-cap companies.  Id.  Atlantic Trust did not suggest that Gilbert should use the cash from the sale of the foreign stocks to pay down his Mellon Bank debt, id., instead advocating "a hold and hope approach."  Id.

In June 2002, Gilbert determined that he needed another increase on his line of credit at Mellon Bank.  Id. at 22.  By that time, the value of Gilbert's holdings had declined, and

---

[3]  In September 2000, the portfolio was worth approximately $19 million.  Third Amend. Compl. ¶ 17; Def.'s Mot. for Summ. J. at 7.

Mellon Bank refused to offer additional credit unless he made Mellon Bank the custodian of his assets.  <u>Id.</u>  Atlantic Trust did not counsel Gilbert against this transaction.  <u>Id.</u>  On July 1, 2002, Gilbert transferred custody of his assets and Mellon Bank increased his line of credit to $8.5 million.  <u>Id.</u>

The bear market continued, and by August 2002, Gilbert was in danger of a margin call by Mellon Bank.  <u>Id.</u>  On August 4, 2002, he converted his Atlantic Trust assets to approximately $10.2 million in cash.  <u>Id.</u>  Later in August, following a market rally, Gilbert decided to purchase $470,000 of equities through Atlantic Trust.  <u>Id.</u> at 23.  He sold that portfolio the following November, and terminated the revocable trust agreement on July 23, 2003.  <u>Id.</u>; Def.'s Mot. for Summ. J. at 10.

## II.  <u>**STANDARD OF REVIEW**</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, I construe

-6-

the evidence in the light most favorable to the nonmovant.

Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

The party moving for summary judgment "bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the burden shifts to the adverse party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996).

### III.  **ANALYSIS**[4]

The crux of Gilbert's complaint is that Atlantic Trust

---

[4]  I apply Massachusetts law to Gilbert's common law claims. Gilbert and Atlantic Trust are parties to the revocable trust agreement and the investment management agreement, both of which contain choice of law provisions selecting Massachusetts law. New Hampshire courts generally honor choice of law provisions in contracts and in trusts.  Allied Adjustment Serv. v. Heney, 125 N.H. 698, 700 (1984) (contracts); Flaherty v. Flaherty, 138 N.H. 337, 339 (1994) (trusts).  Moreover, neither party contends that another state's law should govern Gilbert's common law claims.

invested his portfolio solely in equities when it would have been prudent to invest in diverse classes of assets. He claims that Atlantic Trust failed to advise him that the all-equity strategy was imprudent from the outset and neglected to reconsider the strategy as the stock market entered a steep decline and Gilbert borrowed heavily against his portfolio. Gilbert repeats this general allegation in a variety of forms, asserting claims for breach of trust, breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, negligence, securities fraud, and unfair and deceptive trade practices. I discuss each in turn.

## A.  **Breach of Trust/Breach of Fiduciary Duty**

The revocable trust agreement created a fiduciary relationship between Atlantic Trust, as trustee, and Gilbert, as beneficiary. Under Massachusetts law, this fiduciary relationship subjected Atlantic Trust to certain equitable duties, including the duty of good faith and loyalty, the duty of reasonable care, and the duty to invest trust assets prudently (the "prudent investor rule").[5]  <u>Quinton v. Gavin</u>, No. 98-860-B,

---

[5]  Atlantic Trust's fiduciary duties arose from the revocable trust agreement as well as from its discretionary

2001 Mass. Super. LEXIS 402, at *65–74 (February 15, 2001),
aff'd, Quinton v. Gavin, Mass. App. Ct. 792 (2005).  Gilbert
alleges that Atlantic Trust violated the prudent investor rule by
(1) investing Gilbert's funds solely in equities and failing to
advise him that it would be prudent to diversify; and (2) failing
to adjust the asset allocation as market conditions and Gilbert's
financial situation changed.  Atlantic Trust responds by claiming
that it cannot be held liable for either breach of trust or
breach of fiduciary duty because Gilbert consented to its
investment strategies.

    A fiduciary or trustee ordinarily will not be held liable
for breach of the prudent investor rule if the beneficiary
consented to the challenged conduct.  Reynolds v. Remick, 333
Mass. 1, 10 (1955) ("If a beneficiary consents to an act by the
trustee which would constitute a breach of trust toward the
beneficiary, the beneficiary cannot hold the trustee liable for
the consequences of the trustee's acts."); see also Marcucci v.

---

control of Gilbert's assets (which control was granted to it by
the revocable trust agreement).  See Patsos v. First Albany
Corp., 433 Mass. 323, 330–33 (2001) (broker managing a
discretionary account owes client fiduciary duties).  The parties
treat Atlantic Trust's duties as trustee and fiduciary as
coextensive, so I will do the same.

<u>Hardy</u>, 65 F.3d 986, 992 (1st Cir. 1995); <u>Marine Contractors Co.</u>
<u>v. Hurley</u>, 365 Mass. 280, 286 n.4 (1974).  Gilbert concedes that
he "agreed to [the] proposed asset allocation and it was a joint
agreement between [Atlantic Trust and Gilbert]."  Gilbert Dep. at
113.  In addition, Gilbert received a letter from Atlantic Trust
detailing the all-equity asset allocation and did not contact the
company to request a change either before the plan was
implemented or at any point thereafter.  Thus, I conclude that
Gilbert consented to the all-equity asset allocation and at no
time retracted his consent.

The general rule that a beneficiary's consent bars his
claims for breach of trust and breach of fiduciary duty is
subject to several exceptions.  At issue here is the exception
that applies if

> the beneficiary, when he gave his consent,
> did not know of his rights and of the
> material facts which the trustee knew or
> reasonably should have known and which the
> trustee did not reasonably believe that the
> beneficiary knew.

Restatement (Second) of Trusts § 216(2)(b).  To be entitled to
relief under this exception, the beneficiary must prove that: (1)
he was not aware of his rights or facts material to his consent;

(2) the trustee or fiduciary knew or reasonably should have known of the material facts; and (3) the trustee or fiduciary did not reasonably believe that the beneficiary was aware of the material facts.

Gilbert argues that the exception applies here because he did not know – and Atlantic Trust did not disclose – that (1) Atlantic Trust's proposal to invest all of his assets in equities exposed him to greater market risk than portfolios that included investments in other asset classes; (2) leverage magnified the risk of the all-equity asset allocation, particularly in light of the declining market; (3) Atlantic Trust ordinarily recommended diversification among asset classes; (4) very few Atlantic Trust clients had all-equity portfolios; and (5) Atlantic Trust did not use a proprietary asset allocation model in managing its clients' investments.  Pl.'s Obj. at 14-15.  Gilbert also argues that each of the undisclosed facts were material to his investment decision, that Atlantic Trust was aware of the undisclosed facts, and that Atlantic Trust did not reasonably believe that Gilbert knew of the facts when he agreed to place his investments with Atlantic Trust.

At this stage of the proceedings, I must accept as true

Gilbert's claim that he did not have actual knowledge of the above-cited facts.  Further, because reasonable jurors could disagree as to whether the cited facts were material and whether Atlantic Trust reasonably believed that Gilbert was aware of the facts, Atlantic Trust is not entitled to summary judgment with respect to Gilbert's breach of trust and breach of fiduciary duty claims.

**B.   Breach of Contract**

According to Gilbert, the revocable trust agreement is a contract under which Atlantic Trust was obligated "to manage [Gilbert's] funds," Third Amend. Compl. ¶ 30, and to "provide comprehensive financial advisory services to the Gilbert family." Pl.'s Obj. at 21-22.  Gilbert contends that Atlantic Trust breached its contractual duty to "use its expertise and experience to manage the Gilberts' investments prudently and to achieve [their] investment goals."  Id. at 22.

Under Massachusetts law, the terms in a written contract must "be taken in their plain and ordinary sense unless otherwise indicated by the contract."  Rogaris v. Albert, 431 Mass. 833,

835 (2000).[6]  Gilbert has not identified <u>any</u> language in the

revocable trust agreement to support his claim that Atlantic

Trust contracted to provide "comprehensive financial advisory

services."  The revocable trust agreement transferred Gilbert's

property to Atlantic Trust and gave Atlantic Trust broad

discretion to invest on Gilbert's behalf.  <u>See</u> Rev. Trust Agr. ¶

8(b).  Any additional obligations that Atlantic Trust acquired as

a result of the formation of the revocable trust were fiduciary,

not contractual, in nature.  Accordingly, Atlantic Trust's motion

for summary judgment as to this claim is granted.

**C.   <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>**

Gilbert next contends that Atlantic Trust breached the

implied covenant of good faith and fair dealing by failing to

adjust his portfolio's asset allocation when his financial

situation changed.  Third Amend. Compl. ¶ 40.

"Every contract in Massachusetts is subject, to some extent,

---

[6]  I assume for the purpose of analysis that the revocable
trust agreement is in fact a contract.  John H. Langbein, <u>The
Contractarian Basis of the Law of Trusts</u>, 105 Yale L.J. 625, 627
(1995) (emphasizing contractarian basis of trust law).  <u>Cf.</u>
Restatement (Second) of Trusts § 197(b) ("The creation of a trust
is conceived of as a conveyance of the beneficial interest in the
trust property rather than as a contract.").

to an implied covenant of good faith and fair dealing." <u>Ayash v.
Dana-Farber Cancer Inst.</u>, 443 Mass. 367, 385, <u>cert. denied</u>, 126
S. Ct. 397 (2005).  "The core of the covenant is to ensure that
one party does not deprive another of the 'fruits of the
contract.'" <u>McAdams v. Mass. Mut. Life Ins. Co.</u>, 391 F.3d 287,
301 (1st. Cir. 2004) (quoting <u>Anthony's Pier Four, Inc. v. HBC
Assoc.</u>, 411 Mass. 451, 471-72 (1991)).  Its purpose "is not to
add terms to a contract; indeed, it may not do so." <u>Id.</u>  In
order to establish a breach of the implied covenant, a plaintiff
must demonstrate that the defendant had "a dishonest purpose,
consciousness of wrong, or ill will in the nature of fraud."
<u>Equip. & Sys. for Indus. v. Northmeadows Constr. Co.</u>, 59 Mass.
App. Ct. 931, 932 (2003).

   Gilbert's only allegation of "dishonest purpose,
consciousness of wrong, or ill will" is an accusation that
Atlantic Trust failed to discourage Gilbert from leveraging his
portfolio "in order to keep more funds under its management and
thus garner higher management fees."[7]  Pl.'s Obj. at 23.  Given

---

   [7]  Gilbert's allegations that Atlantic Trust failed to
provide comprehensive financial advisory services, Pl.'s Obj. at
22, and promoted an all-equity asset allocation despite internal
policies to the contrary, <u>id.</u> at 22-23, are not sufficient to

that it was Gilbert's suggestion to borrow against the portfolio in the first place, and that increases in the line of credit came at his request, no reasonable jury could infer that Atlantic Trust acted in bad faith by failing to dissuade him. Accordingly, Atlantic Trust's motion for summary judgment as to this claim is granted.

**D.   Negligence**

Gilbert alleges that Atlantic Trust violated its duty to use due care in the management of his investment portfolio by failing to diversify his portfolio, failing to adjust the portfolio as Gilbert's financial situation and market conditions changed, and failing to warn Gilbert that investing exclusively in equities is risky.  I discuss the applicable statute of limitations before turning to the substance of Gilbert's claim.

1.   Statute of Limitations

Atlantic Trust argues that Gilbert's negligence claim is time-barred.  New Hampshire ordinarily classifies statutes of limitations as procedural rules and therefore applies its own statute of limitations even in cases where a foreign state's

_____

support his claim that Atlantic Trust acted in bad faith.

substantive law applies to the dispute.  <u>Keeton v. Hustler</u>, 131
N.H. 6, 12 (1988).  New Hampshire's three-year statute of
limitations for negligence claims includes a "discovery rule."
Thus, the statute does not begin to run until "the plaintiff
discovers, or in the exercise of reasonable diligence should have
discovered, the injury and its causal relationship to the act or
omission complained of."  N.H. Rev. Stat. Ann. ("RSA") §
508:4(I).

Gilbert filed this action in August 2004, so his negligence
claim is timely if it accrued after August 2001.  Although
Atlantic Trust first advised Gilbert to invest in an all-equity
portfolio in 1999 and the value of his portfolio began to decline
nearly a year before August 2001, Gilbert argues that his
negligence claim is not time-barred because he could not
reasonably have discovered that his losses were Atlantic Trust's
fault until November 2002, when he first "began to suspect the
soundness of the advice he was getting."  Pl.'s Obj. at 26.
Whether Gilbert reasonably should have known before August 2001
that Atlantic Trust's conduct proximately caused his injury is a
question of fact.  <u>Kelleher v. Marvin Lumber & Cedar Co.</u>, Nos.
2002-300, 2003-376, 2005 N.H. LEXIS 177, at *13 ("Whether the

plaintiff exercised reasonable diligence in discovering the
causal connection between the injury and the defendant's alleged
act or omission is a question of fact.").  Because the facts that
bear upon this question remain in genuine dispute, Atlantic Trust
is not entitled to summary judgment based on its statute of
limitations defense.

    2.   <u>Duty of Care</u>

The Massachusetts Prudent Investor Act, Mass. Gen. Laws ch.
203C, § 3, sets forth the applicable duty of care as follows:

> A trustee shall invest and manage trust assets as a prudent
> investor would, considering the purposes, terms, and other
> circumstances of the trust, including . . . . (1) general
> economic conditions; (2) the possible effect of inflation or
> deflation; (3) the expected tax consequences of investment
> decisions or strategies; (4) the role that each investment
> or course of action plays within the overall trust
> portfolio; (5) the expected total return from income and the
> appreciation of capital; (6) other resources of the
> beneficiaries; (7) needs for liquidity, regularity of
> income, and preservation or appreciation of capital; and (8)
> an asset's special relationship or special value, if any, to
> the purposes of the trust or to one of the beneficiaries.

<u>Id.</u> § 3(a)-(c).

Gilbert claims that Atlantic Trust violated this duty of
care by failing to diversify his asset allocation and to re-
examine the asset allocation on a regular basis.  Third Amend.

Compl. ¶ 44.  Atlantic Trust responds that Gilbert's losses were caused by his own negligence in deciding to borrow against the portfolio in a declining market.  <u>See</u> Def.'s Mot. for Summ. J. at 23.

Massachusetts' comparative negligence statute, Mass. Gen. Laws ch. 231, § 85, bars recovery only where the plaintiff's negligence is greater than the defendant's.  Here, Gilbert seeks to recover for Atlantic Trust's failure to diversify the portfolio, particularly in light of increasing leverage.  A reasonable jury could find that Atlantic Trust failed to comply with the duty of care set forth by the Prudent Investor Act.  In addition, a reasonable jury could find that Atlantic Trust's negligence was greater than any negligence attributable to Gilbert.  Accordingly, Atlantic Trust's motion for summary judgment as to this claim is denied.

**E.   <u>Securities Fraud</u>**

Gilbert alleges that Atlantic Trust violated New Hampshire's Blue Sky law, RSA § 421-B:4, by: (1) misrepresenting that it used a proprietary asset allocation model to counsel clients about asset allocation; (2) misrepresenting that diversification among different classes of stocks, rather than different classes of

assets, would control Gilbert's risk; and (3) failing to recommend suitable investments, which Gilbert contends is fraud per se.  Compl. ¶ 47.

Before I can reach the merits of Gilbert's claim, I must determine whether Atlantic Trust's conduct is governed by New Hampshire's Blue Sky laws.

    1.  Choice of Law

The revocable trust agreement's choice of law provision states that "[t]he situs of this trust shall be Massachusetts, and the laws of that commonwealth shall govern the interpretation and validity of the provisions of this instrument and all questions relating to management, administration, and investment of the [trust]."  Rev. Trust Agr. ¶ 13.  Massachusetts securities fraud law does not give Gilbert a private right of action.  See Fenoglio v. August, 50 F. Supp. 2d 46, 59 (D. Mass. 1999).  Thus, if I enforce the choice of law provision and apply Massachusetts law to Gilbert's securities fraud claim, Atlantic Trust is entitled to summary judgment.

New Hampshire courts generally honor choice of law provisions in trusts.  Flaherty, 138 N.H. at 339.  Nevertheless, I decline to enforce the trust's choice of law clause insofar as

-19-

it applies to Gilbert's Blue Sky law claim because to do so would be contrary to public policy.

The United States Supreme Court generally disapproves of choice-of-law clauses that operate "as a prospective waiver" of statutory remedies, noting that such clauses are "against public policy." <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth</u>, 473 U.S. 614, 637 (1985) (right to pursue statutory remedies for antitrust violations). The principle has specific application in the securities fraud context, as courts have held that it is "'against public policy to permit the use of choice of law clauses to circumvent [the] legislatively created shield'" of state Blue Sky laws. <u>In re Infocure Secs. Litig. v. Infocure Corp.</u>, 210 F. Supp. 2d 1331, 1362 (N.D. Ga. 2002) (quoting <u>Alberts v. Davis</u>, No. C75-2483A, 1978 U.S. Dist. LEXIS 15207, at *19 (N.D. Ga. Sep. 29, 1978)).

Enforcement of the choice of law clause is particularly ill-advised in this case because New Hampshire has a strong public policy in favor of protecting investors. The New Hampshire Blue Sky law "appl[ies] when any act instrumental in effecting prohibited conduct is done in this state, <u>whether or not either party is then present in this state</u>." RSA § 421-B:30(VI)

(emphasis added).  The New Hampshire legislature drafted chapter
421-B to furnish extensive remedies to investors who have been
defrauded.  Application of the choice of law clause to bar
Gilbert's remedy under the statute would be inconsistent with
this broad remedial scheme.  Accordingly, I reject Atlantic
Trust's argument that Gilbert's New Hampshire Blue Sky law claim
is barred by the Trust's choice of law provision.

         2.  Misrepresentations

    RSA § 421-B:4(I) provides that:

    It is unlawful for any person who receives any consideration
    from another person primarily for advising the other person
    as to the value of securities or their purchase or sale
    whether through the issuance of analyses or reports or
    otherwise:
    (a) To employ any device, scheme, or artifice to defraud
    another person; or
    (b) To engage in any act, practice, or course of business
    which operates or would operate as a fraud or deceit upon
    the other person.

Gilbert contends that Atlantic Trust violated this section of the
statute when it made misrepresentations about a "proprietary
asset allocation model" and about control of market risk.

    Atlantic Trust vigorously argues in its summary judgment
briefs that these alleged misrepresentations are not actionable
under RSA § 421-B:3, the portion of the Blue Sky law that

prohibits fraud "in connection with the offer, sale, or purchase of any security."  Gilbert concedes that the alleged misrepresentations were not made "in connection with the offer, sale, or purchase of any security" under RSA § 421-B:3, but correctly observes that Atlantic Trust has not addressed the statements in the context of RSA § 421-B:4(I).

The language of RSA § 421-B:4(I) differs from the language of RSA § 421-B:3.  It prohibits fraud by "any person" who advises another person "as to the value of securities or their purchase or sale."  RSA § 421-B:4(I).  This significant difference prevents me from concluding that Atlantic Trust is entitled to summary judgment under RSA § 421-B:4(I) merely because it is entitled to summary judgment under RSA § 421-B:3.

Atlantic Trust has not developed any other argument as to why I should grant summary judgment with respect to Gilbert's misrepresentation claim under RSA § 421-B:4(I).  Accordingly, Atlantic Trust's motion for summary judgment is denied as to this claim.

3.   Recommendation of Unsuitable Investments

Gilbert contends that Atlantic Trust also violated RSA § 421-B:4(I) when it allegedly recommended unsuitable investments

for his portfolio.  Although RSA § 421-B:4(I) expressly applies only to conduct that operates as a fraud or deceit, RSA § 421-B:4(V)(a) makes it a violation of § 421-B:4(I) for an "investment adviser" or "investment advisor agent" to make unsuitable investment recommendations.  Gilbert relies on this provision in arguing that Atlantic Trust is liable under RSA § 421-B:4(I) for its allegedly unsuitable investment recommendations.

The short answer to this argument is that RSA § 421-B:4(V) is inapplicable because the parties agree that Atlantic Trust is neither an "investment adviser" nor an "investment adviser agent" as those terms are defined in chapter 421-B.  See RSA § 421-B:2(IX)(a) (trust companies are not investment advisers).  Thus, Atlantic Trust is entitled to summary judgment with respect to this claim.

**F.   Unfair and Deceptive Trade Practices**

Gilbert argues that Atlantic Trust's allegedly false statements that it used a "proprietary asset allocation model" and that market risk would be mitigated by a diversified stock portfolio also constitute violations of the Massachusetts consumer protection statute, Mass Gen. Laws ch. 93A.  The statute prohibits "[u]nfair methods of competition and unfair or

-23-

deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2.

Under Massachusetts law, "[a] practice is unfair or deceptive [if] it (1) is within the penumbra of some common law, statutory, or other established concept of fairness; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors."  Cablevision of Boston, Inc. v. Public Improvement Comm'n, 38 F. Supp. 2d 46, 60 (D. Mass. 1999).  "'The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.'"  Id. at 61 (quoting Quaker State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510, 1513 (1st Cir. 1989)).

Atlantic Trust first contends that its activities are not subject to chapter 93A.  The statute exempts from coverage "transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States." Mass. Gen. Laws ch. 93A, § 3.  Atlantic Trust argues that this provision bars Gilbert's chapter 93A claim because Atlantic Trust is "subject to comprehensive regulation by the Officer of the

-24-

Comptroller of the Currency, as well as the Commonwealth of Massachusetts."  Def.'s Mot. for Summ. J. at 31.  I disagree.

To be entitled to relief under §3, Atlantic Trust "'must show more than the mere existence of a related or even overlapping regulatory scheme that covers the transaction.'" Cablevision, 38 F. Supp. 2d at 61 (quoting Bierig v. Everett Square Plaza Assocs., 34 Mass. App. Ct. 354, 367 n.14 (1993)). "'Rather, a defendant must show that such scheme affirmatively permits the practice which is alleged to be unfair or deceptive.'"  Id.  Atlantic Trust has not shown that any state or federal regulation "affirmatively permits" the actions of which Gilbert complains.  Accordingly, it may not claim the benefit of the § 3 exception.

Atlantic Trust next argues that even if it is subject to chapter 93A, the alleged misrepresentations are not unfair or deceptive.  I decline to rule on the merits of this argument because the issue has not been adequately briefed.  Accordingly, I deny Atlantic Trust's motion for summary judgment with respect to this claim without prejudice to its right to raise the issue again at trial.

-25-

## IV.  **CONCLUSION**

For the reasons set forth above, Atlantic Trust's motion for summary judgment (Doc. No. 70) is granted as to Gilbert's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and recommendation of unsuitable investments under RSA § 421-B:4(I).  Atlantic Trust's motion is denied as to Gilbert's claims for breach of trust, breach of fiduciary duty, negligence, misrepresentations under RSA § 421-B:4(I), and violation of Mass. Gen. Laws ch. 93A.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

April 19, 2006

cc:  Martha Van Oot
     Michael C. Harvell